

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00186-CR

_____

KEVIN BENTI DAVIS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 217th Judicial District Court
Angelina County, Texas
Trial Court No. CR-28107

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Kevin Benti Davis, Jr., claims that he was convicted not for being involved in a crime, but for being in a car with people who committed a crime, and then for making the mistake of running away from police when they stopped the vehicle. In a bench trial in Angelina County,[1] Davis was convicted of aggravated robbery and sentenced to twelve years' imprisonment. Davis argues that the evidence is insufficient to support the verdict and that the accomplice-witness testimony on which the State relied was not sufficiently corroborated to be considered as evidence supporting his conviction. We affirm the trial court's judgment because (1) the evidence sufficiently supports the verdict and (2) the accomplice-witness testimony was sufficiently corroborated.

*(1)* *The Evidence Sufficiently Supports the Verdict*

In evaluating evidentiary sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated robbery beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine sufficiency under the direction of the *Brooks* opinion,

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Under a hypothetically correct jury charge, the State must prove that appellant committed the offense of aggravated robbery either himself or that he was criminally responsible for the offense as committed by the conduct of another.

The Texas Penal Code provides that a person commits the offense of robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he or she (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (Vernon 2003). The offense becomes aggravated robbery, a first degree felony, when the actor, inter alia, uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003). The hypothetically correct jury charge would contain these requirements. *Howard v. State*, 306 S.W.3d 407, 410 (Tex.

3

App.—Texarkana 2010, pet. granted). The only aspect of sufficiency that is challenged is whether the State proved Davis was the actor.

Two men, one of them masked and brandishing a semiautomatic pistol, entered a house and robbed its resident of some money, a broken .25 caliber pistol, a knife, and a car amplifier. The victim, Stephen Spikes, testified that he saw the robbers drive away in a white Hyundai. In the sequence of events recounted by Spikes, a female acquaintance came to his house asking for a cigarette, followed by a black male, who he did not know, wearing a blue jumpsuit. At trial, Spikes identified that man as Davis. About ten minutes after the male and female left, another male appeared—followed closely by a male wearing a blue jumpsuit and a black ski mask and holding a silver, semiautomatic handgun. These males threatened Spikes. Spikes directed them to the money, and they stole it and the other items.[2] Spikes testified that it was his belief that the masked robber was the same person he had just met—based on his belief that it was the same jumpsuit. He also stated that the robber had the same body type, height, and weight as the previous man in blue. Thus, Spikes concluded the masked robber was Davis.

Spikes called police, who arrived within five minutes. A patrolman en route saw a white car matching the report and began to follow it. The white car's driver tried to outrun the officer. Within a few minutes, that officer and another who joined the chase had caught the fleeing automobile after the driver turned into a dead end street in a wooded area. Two of the three

---

[2]In an effort to explain this robbery, Spikes testified that the brother of the cigarette girl knew Spikes had recently inherited some money and was purchasing things.

occupants jumped out of the vehicle and ran before the first officer arrived; the third stayed in the car, where he was arrested by a second officer. The officer testified that, among other things, they found at the scene the stolen amplifier, a pistol, a body-armor vest, a ski mask, a knife, and Spike's wallet, as well as cash and silver certificates taken during the robbery. The officer also testified that two other suspects were captured and arrested within an hour.

Accomplice witness Brandon Johnson, the driver and the one who had stayed with the car after being cornered, testified that Adrian Jones (who had come with him from Houston) and Davis went into Spikes' house, as he thought, to buy drugs and the amplifier. Johnson testified that he tried to outrun police only because they told him to and because he thought his passengers had drugs in his car. He testified that Davis asked to borrow his silver pistol in case there was trouble, explaining that Spikes was a gangster type and that he wanted the gun for protection. He also testified that Davis still had the pistol when he returned to the car carrying the vest and amplifier. Johnson stated that he asked them several times how much marihuana they bought, but received no answer. Johnson testified that he had talked with Jones since the robbery and that Jones was supposed to turn himself in to vouch for Johnson's story, but that Jones did not want to tell the truth. Finally, Johnson also testified that the ski mask belonged to Davis, who was wearing it like a cap.

Davis testified that he was in the vehicle and that he ran away. There is no other point of agreement between his version of events and those set out above. Davis testified that there were

5

five, not three, individuals and that the other two ran away from Spikes' house without getting back into the car. Davis testified that he did not go up to the house, that he had no hat, and that he did not even know a gun was in the car.

In essence, Davis testified that he was merely in the wrong place, with the wrong people, at the wrong time. In support of that, he pointed out that he had never been in any kind of trouble before, that he had just turned nineteen, that he had a new son, that he was newly married, and that he was, at the time of the robbery, due to report for military boot camp in about three weeks. He admitted running away from police, but only because he was understandably afraid that he would be accused of something that he did not do. Davis also claimed that Johnson had belonged to a prison gang, that Jones was not an acquaintance of his, and that Davis had met Jones the first time that night.

On cross-examination, Davis agreed that he had gotten a ride with Johnson, but that he was not "hanging" with him. Davis, instead, claimed Johnson was giving him a ride home. Both Jones and Johnson were in their late twenties. Davis admitted candidly that—as he was afraid something was going on—he had made an initial mistake by not getting out of the car when he saw the others running toward it from Spikes' house. Davis said he did not get out of the car because it was his transportation home. The evidence also shows that Johnson was in some way related to Davis' wife.

6

On redirect, Davis reiterated that this was the same story he immediately told police when he was arrested, that the car was not his, and that he had not mentioned a gun in his statement because at that time he did not know there was one in the car.

In determining the sufficiency of the evidence, we recognize that the evidence in this case is not conclusive. That said, there was uncontroverted testimony that Davis was in the car from which the robbers emerged, that the stolen items were later in the car with him, and that he later attempted to escape from pursuing police when they caught up with that car. The victim testified that he had met Davis just minutes before the robbery, that the armed, masked man who came in within a few minutes to commit the robbery matched the physical description of Davis, down to the blue jumpsuit. One other person from the car was excluded as being the robber, because he entered the house along with the masked robber. The accomplice witness testified categorically that Davis was the masked robber.

We acknowledge that there is some evidence which, if believed, would lead to an acquittal. We must also acknowledge that there is testimony from the accomplice witness that directly incriminates Davis as the masked robber, evidence about his presence at the scene and his fleeing from police when the escaping vehicle was stopped, and testimony from the victim matching the masked robber by the corresponding clothing, size, and body shape of Davis as observed when he entered Spikes' house a very short time before the robbery. The evidence supports a finding of

guilt. Under this state of the record, and under the mantra of *Brooks*, the evidence is sufficient to support the verdict.

*(2)     The Accomplice-Witness Testimony Was Sufficiently Corroborated*

Davis also complains that the accomplice-witness testimony was not sufficiently corroborated. The test is whether, after excluding the accomplice's testimony, there is other evidence of an incriminating character which tends to connect the defendant with the commission of the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The other evidence needs only to link the accused to the commission of the crime and be enough that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). As we have set out above, there is nonaccomplice evidence which, though not conclusive, is of an incriminating character tending to connect Davis with the commission of this offense. Thus, the accomplice-witness testimony could properly be considered by the jury in determining Davis' guilt.

We affirm the trial court's judgment.


                                            Josh R. Morriss, III
                                            Chief Justice


Date Submitted:      March 3, 2011
Date Decided:        March 11, 2011


8

Do Not Publish